If the Carter judgment continued a lien upon the lands of Hill after the 1st of September, 1855, then, it must be conceded, the plaintiff's redemption was ineffectual, and he was not entitled to the relief asked for. It is undeniable that Miller never intended to discharge and satisfy that judgment. The money paid to the sheriff was his money, and he did not, in terms, pay it to satisfy the judgment. Are we to assume that the judgment became extinguished and discharged by a payment made under the circumstances disclosed in the receipt and the testimony of the sheriff? The sheriff says, Miller wanted an assignment of the judgment; that he so informed the attorney for the plaintiffs, who gave him the assurance that, if they had no objection, the assignment would be executed. The money was therefore paid over, with the expectation that the judgment would be assigned to Miller, *Page 622 
and was received by the firm of Carter and others with full knowledge of this expectation, and that the money was paid for that purpose. They recognized this understanding by subsequently executing the assignment. There could have been no intention on the part of Miller of satisfying the judgment, and it is clear that the acts of the parties negative any such assumption. But it seems to me that the language of the receipt is conclusive to show that the money was not paid to satisfy the judgment, but for an assignment of it. It is inartificially drawn, and does not express connectedly what was obviously the understanding at the time, but its true meaning can be easily extracted. The money paid was to "apply on" the judgment of Carter and others, the same expression as used in the receipt given for the notes of Hill to liquidate the Lovell and Coles judgment. These notes, when paid, were "to apply on the judgment," and the judgment was to remain in force until they were paid. An argument might, therefore, with equal propriety, be drawn, that when the notes were paid, the Lovell and Coles judgment was no longer to have any force, and if the judgment was satisfied in the one instance, it was in the other. But further language is used, even more emphatic: "Said judgment to be under the control of said Miller, and not to be canceled except by his order."
There is an express stipulation that the judgment is to remain, and continue to be thereafter, under the control of Miller. This is in hostility with the idea that the judgment was satisfied by the payment of the money to the sheriff. Again, it is expressly stipulated that the judgment shall not be canceled, except by the order of Miller. He thus insured his own security, by the agreement that the judgment was to remain uncanceled, except by his direction. Now it is argued that Carter and others were not bound by these stipulations, and they were under no obligations to confirm them. That may be true, but they did confirm them, by accepting the money and executing the assignment; and these acts of theirs *Page 623 
are equivalent to an original authority, conferred by them on the sheriff to make this arrangement. It was, no doubt, as competent for them to agree to accept Miller's money, to apply on their judgment against Hill, and to stipulate that thereafter it should be under his control, and should not be canceled, except by his direction, as it was for the plaintiff in the Lovell and Coles judgment to accept Hill's notes, to apply on that judgment; and the judgment in the one case was no more canceled than it was in the other. It was the intention of the parties, in both instances, that he who paid the money should have the benefit of the judgment and the lien created by it, for his reimbursement. It is equitable that this should be done, and it is not clear that, if Carter and his co-plaintiff had refused to execute the assignment, a court of equity would not have compelled them to do so, or to return to Miller the money he paid in the expectation that the judgment would be assigned to him. The last clause of the receipt is that in which the obscurity is found: "If plaintiffs will consent to and make an assignment of said judgment to said Miller." I think the sheriff intended by this to avoid any engagement, on his part, that the plaintiffs should make the assignment, but that the receipt was intended to read, and should read, if the plaintiffs consent to and make an assignment of said judgment to said Miller, said judgment is to be under his control, and not to be canceled except by his order. As before remarked, the receipt of the money and the execution of the assignment by Carter and others are be deemed, in my opinion, evidences of ratification of the acts of the sheriff, and are as binding upon them as if made by themselves originally. They do not repudiate the acts of their agent. On the contrary, they have ratified and confirmed them. I do not see how this plaintiff can maintain that the judgment was canceled and satisfied by the payment to the sheriff, when the party making it, the one receiving it, and the parties for whose benefit it was made, have expressly stipulated and agreed to the contrary. It follows, from these views, that the redemption of the plaintiff was *Page 624 
avoided by the subsequent redemption of Miller, under the Carter judgment, which was then a lien on the premises and in full force.
I have not deemed it necessary to discuss the other point, whether the redemption of the plaintiff was in fact according to law. The statute applicable to this subject (2 R.S., p. 373, § 60, sub. 3), requires an affidavit by the creditor, of the true sum due on such judgment at the time of claiming such right to redeem. A literal construction of this section of the statute would show beyond all controversy that the affidavit made by this plaintiff did not conform to its requirement in this essential particular. It did not state the true amount due to the creditor making the redemption, but stated what was nearly double the amount due thereon. The plaintiff had paid only one of the notes for $1,557, as the consideration for the assignment of the judgment, and which, with the interest thereon, was all that was due on the judgment. The amount of principal was incorrectly stated in the affidavit, as also the interest due thereon. I do not see how this express mandate of the statute can be evaded, and it is important that it should be adhered to. A junior judgment creditor, coming forward to redeem, as in the present case, might have been deterred from making the redemption by seeing the large sum erroneously claimed to be due the plaintiff, or if he determined, notwithstanding, to redeem, he would have been compelled to pay the amount stated in the affidavit, while the true sum was nearly half less. These considerations, undoubtedly, influenced the legislature in requiring the true amount due each redeeming creditor to be stated in the affidavit made by him. And I do not see upon what ground we are at liberty to depart from the plain language of the statute. If it were necessary to the decision of this case that we should pass upon this question, I am, as at present advised, inclined to the opinion that the affidavit was, in this respect, fatally defective; but, as the case can be disposed of on the other ground, I do not purpose definitely to pass an opinion on this question. *Page 625 
The order of the general term, granting a new trial, should be affirmed, and, in accordance with the plaintiff's stipulation, there should be judgment final for the defendants.
DENIO, Ch. J., did not sit in the case; all the other judges concurring,
Ordered accordingly.